

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:BAS                                    *271 Cadman Plaza East*
                                           *Brooklyn, New York 11201*

March 23, 2018

By Hand Delivery and ECF

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>          Re:    United States v. Amaury Rosario
>                 Criminal Docket No. 99-533 (ARR)

Dear Judge Ross:

   The government respectfully submits this letter in response to the defendant Amaury Rosario's March 12, 2018 submission (the "March submission"). The defendant originally submitted his sentencing memorandum on June 9, 2017. In his March submission, the defendant not only raised several new arguments for the Court's consideration, but also mischaracterized arguments set forth by the government in its January 25, 2018 submission (the "January submission"). Below, the government briefly responds to certain of these arguments.

I.  The government's recommendation of a non-life sentence of 45 years' imprisonment is sufficient but not greater than necessary under 18 U.S.C. § 3553(a)

   In his March submission, Rosario characterizes the government's recommendation of a 45-year sentence as a "de facto" sentence of life imprisonment. In considering the sentencing factors under 18 U.S.C. § 3553(a), the government respectfully submits that there is a range of reasonable sentences that the Court could impose in sentencing Rosario. A life sentence is within this range and would also be consistent with the applicable Sentencing Guidelines in this case. However, in its January submission, the government made a deliberate choice to recommend a non-life sentence of 45 years as sufficient but not greater than necessary under 18 U.S.C. § 3553(a). As discussed more fully in the January submission, this recommendation balances the fact that Rosario, who was less than a month shy of his 18th birthday at the time of the crime, executed four innocent victims with the fact that over the past ten years, Rosario has demonstrated rehabilitation and a diminished likelihood of recidivism.

In support of its flawed argument that the government's sentencing recommendation amounts to a "de facto" life sentence, Rosario selectively cites from a 2015 report by the United States Sentencing Commission (the "Commission") titled "Life Sentences in the Federal System."  In this report, the Commission analyzed a limited set of sentences that were so severe that they had the practical effect of amounting to a life sentence (a "de facto" life sentence).  Notably, the Commission explained that the average age of the offenders in this group was 37 years old and that the length of sentences that it considered to be "de facto" life sentences ranged from 470 to 3,120 months. Id. at 10-11.  In detailing how it arrived at its conclusion that these sentences amounted to "de facto" life sentences, the Commission explained that "[g]iven that the average age of the offenders in this group was 37 years, these average sentence lengths support a presumption that the judges imposing them intended the offenders to remain incarcerated for the remainder of their lives." Id. at 12.

Here, it is inapposite to rely on the Commission's report to argue that a 45 year sentence amounts to a "de facto" term of life imprisonment.  Rosario, who was born on December 6, 1977, began his term of federal imprisonment on August 17, 1999 when he was 21 years old, which is much earlier than the average age of the defendants in the Commission's study.  If the Court were to accept the government's recommendation, Rosario would likely be released from federal custody in his early to mid-sixties, at an age where he would have an opportunity for a second chance at life.  Ultimately, given Rosario's age and the length of the government's recommended sentence, unlike in the cases considered by the Commission, there should be no presumption here that the government, or the Court if it were to accept the government's recommendation, intends for Rosario to remain incarcerated for the remainder of his life.

In addition to mischaracterizing the government's recommended sentence as one of life imprisonment, Rosario for the first time submits his own recommended sentence: 25 years' imprisonment.  Notably, however, at Rosario's original sentencing, the Court imposed concurrent sentences of 20 years' imprisonment on Counts 1 and 2 (conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 and Hobbs Act robbery in violation of 18 U.S.C. § 1951, respectively), and a consecutive sentence of 10 years' imprisonment on Count 3 (discharging a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)).  Rosario offers no justification for his apparent belief that the Court can re-sentence him on these other, non-life counts that are not subject to re-sentencing pursuant to Miller.[1]  However, regardless of whether the Court has the authority to re-sentence on these other counts, the Court should not do so.

---

[1] Indeed, in considering whether a Court may re-sentence on all counts, the relevant case law seems to limit these instances to cases where, unlike here, re-sentencing results from a misapplication of the Sentencing Guidelines.  See e.g., United States v. Atehortva, 69 F.3d 679, 685 (2d Cir. 1995) ("Courts have generally treated resentencing hearings as opportunities for de novo hearings when resentencing occurrs as a result of misapplications of the Sentencing Guidelines.").

II.     The government's recommendation of a non-life sentence of 45 years' imprisonment
        does not create an unwanted disparity in sentencing under 18 U.S.C. § 3553(a)

        In his March submission, Rosario draws false comparisons between his
case and other Miller re-sentencings in an effort to argue for a lenient sentence relative to
those received by other Miller petitioners.  In fact, in recommending a sentence of 25 years'
imprisonment, Rosario boldly argues that he should receive the most lenient sentence issued
to date in a Miller re-sentencing in the Eastern District of New York.  While the government
will not address all of the issues with Rosario's flawed analysis, the government respectfully
highlights a few particularly significant points for the Court's consideration.

        First, Rosario brazenly suggests that he should receive the same sentence – 25
years' imprisonment—as the one issued in United States v. Alejandro, 98-CR-00290 (CM)
(S.D.N.Y. June 18, 2014), a case that is completely distinguishable.  As detailed in the
government's January submission, Alejandro involved a 15-year old defendant who served
as a lookout for a murder and was not the shooter.  Rosario, on the other hand, was the
triggerman in a quadruple-murder and less than a month shy of his 18th birthday at the time
of the crime.  If Rosario were to receive the same 25 year sentence as in Alejandro or a
sentence that is similarly lenient, given the significant differences in culpability between the
two petitioners, such a sentence would actually create an unwarranted disparity in sentencing
under 18 U.S.C. § 3553(a).

        Second, whereas in his original submission, Rosario appears to have primarily
relied on United States v. Sheppard, 2017 WL 875484 (W.D. Missouri 2017) to argue for a
reduced sentence, in his March submission, Rosario no longer mentions this distinguishable
case, and instead appears to particularly rely on United States v. Scott, 15 CR 537 (VEC)
(S.D.N.Y. February 7, 2017).  However, Scott is also distinguishable—most notably, unlike
in Rosario's case, Scott did not involve execution-style murders.  Instead, in Scott, the
defendant, who was attempting to rob the passenger of a taxi at gun-point, was confronted by
a passerby on the street and then after someone in the taxi reached for his gun, shot and
killed the taxi-driver.  This fact-pattern is markedly different than Rosario's case, where the
victims were brought to the back of the store, laid face down, and executed.  Unlike in Scott,
here, the victims did not confront Rosario or the other perpetrators.  Accordingly, based upon
the nature and circumstances of their respective offenses, it stands to reason that Rosario is
also more culpable than the defendant in Scott and should receive a lengthier sentence.

        Moreover, Rosario makes much of the fact that in Scott, the government, as
part of a plea deal with the defendant, agreed to a sentence reduction pursuant to Application
Note 2(B) to USSG § 2A1.1.(a).  Rosario argues, for the first time, that the Court should
apply such a departure in his case.  As explained in the application note, a court should
consider such a departure only when a defendant did not knowingly or intentionally commit
murder.  By way of example, the Sentencing Commission explains that "a downward
departure may be warranted if in robbing a bank, the defendant merely passed a note to the
teller, as a result of which the teller had a heart attack and died."  Here, such a departure is

inapplicable.  As the triggerman in the execution of four innocent victims, Rosario clearly intended to commit these murders.  Moreover, even in administering her sentence in Scott, Judge Caproni expressed skepticism that such a departure was warranted, noting "I'm not convinced that application note is particularly applicable to this scenario.  This isn't a teller having a heart attack when robbed."  United States v. Scott, Transcript of January 9, 2017 Sentencing, at 5.  However, Judge Caproni agreed to its application because of the parties' stipulation and because it would not affect her sentence.  Id.

Third, in an effort to argue for his own diminished culpability, Rosario misstates the facts of the Green Dragons cases United States v. Wong, 90-CR-1019 (RJD) (E.D.N.Y. April 8, 2016) and United States v. Wang, 90-CR-1019 (DLI) (E.D.N.Y. May 17, 2017).  The crux of Rosario's argument is that he was forced to commit murder by the older participants in the robbery and that unlike him, Wong and Wang, who were "unsupervised by older perpetrators," chose to commit murder.  However, setting aside the problematic characterization of his own conduct, Rosario misrepresents the facts in Wang and Wong.  Both Wong and Wang, who were each 16 at the time of their respective crimes, were members of a violent street gang and had received explicit orders from their gang leaders to commit the murders in question.  See, e.g., Wang Sentencing Mem. (90-CR-1019, Dkt. Entry 454) at 3 ("On July 15, 1989, when [Wang] was 16, the Green Dragons instructed [Wang] and another member, Alex Wong, to kill a restaurant manager at the Tien Chau restaurant.").  Accordingly, it is misleading to suggest that Wong and Wang had more volition than Rosario did at the time of the murders and that as a result, Rosario should receive a reduced sentence.

Fourth, despite arguing for a sentence that would fall on the low-end of those received by Miller petitioners, Rosario acknowledges that, unlike in the other Miller cases discussed in the parties' submissions, a sentencing enhancement for obstruction of justice applies in his case.  As the government noted in the January submission, at the original sentencing, the Court found by clear and convincing evidence that the defendant's testimony was willfully and intentionally false.  (Sent. Tr. at 9).  Rosario attempts to minimize the fact that he perjured himself by noting that other Miller petitioners maintained their innocence throughout trial and ensuing appeals, as well as excusing his decision to lie under oath as a function of his immaturity at the time of his federal trial.  However, there is, of course, a difference between maintaining one's innocence and requiring the government to meet its burden of proof at trial and repeatedly taking the witness stand, as Rosario did, and lying about one's innocence and fabricating accounts of police misconduct.  It is only the latter that results in an obstruction of justice sentencing enhancement.  Moreover, Rosario's efforts to minimize his decision to lie under oath as a function of immaturity conflicts with his emphasis in his March submission that after being released from state custody and moving to Georgia, he demonstrated the maturity and honesty to live a law-abiding life.  Rosario cannot have it both ways—he cannot simultaneously argue that he should receive credit for the maturity that he demonstrated in Georgia before his federal trial and also that he should be excused for the immaturity that he demonstrated in deciding to perjure himself at that trial.

III.   Rosario improperly takes issue with Probation's Pre-Sentence Report and misstates Probation's position on a possible downward departure

In his March submission, Rosario emphasizes that there are material conflicts between the recitation of facts in the Pre-Sentence Report (the "PSR") and the testimony and evidence that make up the trial record, and that any discrepancies should be resolved in favor of the trial record. This argument is not appropriate for the purposes of a Miller re-sentencing where the underlying facts of the case are not to be re-litigated. Here, the relevant inquiry is only whether the petitioner's crime reflects the "transient immaturity of youth" or "irreparable corruption." Despite the fact that this argument by Rosario is misplaced, the government notes that at his original sentencing, defense counsel confirmed that he and the defendant had reviewed the PSR and did not raise any factual objections to the description of the offense conduct. Moreover, even assuming that it would be appropriate at this stage to consider any inconsistencies between the PSR and the trial record, the only conflict that Rosario highlights in his March submission is whether he participated in bringing the victims from the front of the Compadre Grocery to the back of the store. Ultimately, even if the Court were to consider and credit this discrepancy, it has no impact on Rosario's culpability.

Additionally, in his March submission, Rosario mistakenly argues that the Probation Department has recommended that the Court issue a downward departure under USSG § 5K2.12 on the basis of coercion or duress. To be clear, Probation has not made such a recommendation. In its Second Addendum to the PSR, Probation only concludes that such a departure "could have been considered by the Court at the time of the defendant's original sentencing" (emphasis added), not that the Court should have done so. For the reasons set forth in its January submission, the government respectfully submits that the Court should deny a request for a departure pursuant to USSG § 5K2.12.

IV.    Conclusion

For the reasons set forth herein and in the January submission, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of 45 years.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    _____/s/_____
Benjamin A. Saltzman
Special Assistant U.S. Attorney
(202) 514-0337

cc:    Clerk of Court (ARR) (by ECF)
Jan Rostal, Esq. (by ECF and Email)
United States Probation Officer Victoria Main (by Email)